Lynn Richard NORTON,
Plaintiff-Appellant,

v.

Gail COLYER, Sheriff of Greene County, Tennessee, et al.,
Defendants-Appellees.

No. 84–5081.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 19, 1986.

Decided Sept. 10, 1987.

Lynn Richard Norton, pro se.

Frank W. Neuber, Bowling Green, Ky., pro bono, for plaintiff-appellant.

N.R. Coleman, Jr., Milligan, Coleman, Fletcher Gaby & Kilday, Greeneville, Tenn., for defendants-appellees.

Before MILBURN and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

PER CURIAM.

The appellant, Lynn Norton, filed an action under 42 U.S.C. § 1983 against the Sheriff of Greene County, Tennessee and the County, alleging deprivation of constitutional rights while confined in the county jail. After a trial by consent before a United States Magistrate, a jury verdict was rendered in favor of the defendants and Norton appeals, attacking the jury charge and the admission of certain evidence. We affirm the order of the district court entered on the jury verdict.

Norton was charged (and ultimately convicted) of grand larceny and armed robbery. He was confined in the Greene County Jail after his arrest on January 18, 1983. A succinct statement of his claims, excerpted from his supplemental brief,[1] is as follows:

Subsequently, Plaintiff was denied food (the morning meal on January 19, 1983); refused a bed or a mattress (after being moved to the Federal Room, on January 19, 1983); forced to sleep on the floors of the Drunk Tank and Federal Rooms; suffered back pains and was refused medical treatment in violation of his rights to due process of law and not to be subjected to cruel and unusual punishments under the United States and Tennessee Constitutions. [citations omitted]

His requests for medical treatment having been refused, in order to secure such treatment, Plaintiff cut his arm, forcing the Jail authorities to take him to the Hospital for treatment. Upon his return to the Greene County Jail, the Plaintiff was again placed in the Drunk Tank (for five to six hours) and, ultimately, in the Federal Room under conditions previously stated. Because of water pipes being stopped up, water was backed up on the Bathroom floor to a depth of two to three feet. Milk cartons had been provided for inmates to walk on to get to the commode (hole in the floor). It was while walking on these milk crates that Plaintiff fell (when the crates came out from under his feet), causing him to land on the floor, and breaking open the Plaintiff's arm wound.

After again being taken for medical treatment and being returned to the Greene County Jail, the plaintiff was once more placed in the Drunk Tank and left there for four days without clean water. He was refused a bed or mattress, and was fed only parts of meals. [These] conditions ... constituted cruel

---

1. Citations in the brief indicate that most, if not all, of the brief quoted here is also excerpted from Appellant's brief in the district court.

and unusual punishments and a denial of due process of law, both under the United States and Tennessee Constitutions. [citations omitted]

Supplemental Brief of Appellant at 7–8.

Conditions at the jail were undoubtedly deplorable, because in the course of this action on December 30, 1983, the Magistrate granted a motion to certify a class consisting of all pretrial detainees at the jail, for the purpose of challenging the adequacy of the jail. The parties assigned the case to U.S. Magistrate Robert P. Murrian by agreement, who tried the case to an advisory jury. Murrian accepted the jury's verdict that Norton's individual constitutional rights were not violated and entered judgment against Norton based upon the verdict on January 13, 1984. Murrian took the verdict in favor of the defendants with respect to the class under advisement; and, in a memorandum opinion entered February 21, 1984, the magistrate concluded that conditions were inadequate and ordered that certain conditions of medical treatment, population size, supervision, hygiene, and structure be observed at the old jail, and that a new jail must be constructed within the time limits of the order.

In the trial, Norton's counsel objected to the admission of certain evidence showing that Norton was dependent upon drugs. The records in question were medical records made at the Tacoma Hospital emergency room by a Dr. Myers.[2]

■ Norton makes two major contentions in his effort to overturn the jury verdict. The first is that the jury was erroneously charged when it was told that its inquiry was "limited to whether ... the conditions of confinement amounted to punishment or otherwise violated a specific constitutional provision," and furthermore that, "current federal and state guidelines for the management of the jail are not controlling in this case." However, Norton did not take any of the procedural steps necessary to preserve this issue for appeal.

He did not object to the instructions at the time of trial, did not move for a new trial, and did not file any post-judgment motion. *See Murphy v. Owens-Illinois, Inc.,* 779 F.2d 340, 346 (6th Cir.1985). Therefore, our consideration of the issue on appeal is barred by Rule 51, Fed.R.Civ.P., which states:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections.

In any event, there is no merit to Norton's contentions, as the first disputed instruction follows closely the language of the Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 543 n. 27, 99 S.Ct. 1861, 1876 n. 27, 60 L.Ed.2d 447 (1979), and the second instruction follows the language in *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

■ Norton's remaining contention is that certain medical records introduced into evidence by Colyer and Greene County, pertaining to his use of drugs, were inadmissible hearsay. The records were introduced to support the defense contention that Norton's repeated requests to be transferred to the infirmary were motivated more by the desire to obtain drugs than by actual medical necessity.

The admissibility of this evidence is clearly permitted by the Business Records Act, 28 U.S.C. § 1732 (1982 & Supp. III 1985), and Rule 803(6) of the Federal Rules of Evidence. Both provisions allow the admission of business records, *i.e.* records of regularly conducted activity. *Taylor v. B. Heller & Co.,* 364 F.2d 608, 613 (6th Cir. 1966) (28 U.S.C. § 1732); *Petrocelli v. Gallison,* 679 F.2d 286, 291 (1st Cir.1982) (Fed. R.Evid. 803(6)). Hospital diagnoses may qualify for this exception to the hearsay rule. *Petrocelli v. Gallison,* 679 F.2d at 292; *Rivers v. Union Carbide Corp.,* 426 F.2d 633, 637 (3d Cir.1970) (28 U.S.C.

---

**2.** Dr. Ernest Grant White, a medical doctor and emergency room physician at Tacoma Hospital, testified to the content of the record at the trial. Dr. White testified that Norton's chart contained the diagnosis of "drug dependency." White testified that it "looks like" the diagnosis is in Myers's handwriting, and Myers "signed the chart."

§ 1732); *but see Kuklis v. Hancock*, 428 F.2d 608, 612 (11th Cir.1970) (28 U.S.C. § 1732). Rule 803(6) specifically refers to the "compilation, in any form, of ... diagnoses, made at or near the time by ... a person with knowledge, if kept in the course of a regularly conducted business activity...."

The magistrate's ruling permitting the evidence to go to the jury was proper. The judgment of the district court entered on the jury verdict is AFFIRMED in all respects.