Gary LEWIS, Plaintiff,

v.

Francisco VELEZ, Joseph Bennie, Thomas Casciano, Juan Lopez, Richard Richardson, Stanley Williams, Francisco Bryan, Thomas Hayes, and "John Does," Defendants.

No. 89 Civ. 5085 (MJL).

United States District Court, S.D. New York.

May 19, 1993.

Tigran W. Eldred, Michael A. Stein, New York City, for plaintiff.

O. Peter Sherwood, Corp. Counsel of City of New York, New York City (Vincent D'Orazio, Sanjay Malhotra, Scott A. Korenbaum, of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

On May 1, 1989, plaintiff Gary Lewis, a prison inmate, had two altercations with a number of correction officers that resulted in injuries to Mr. Lewis and several of the officers. Mr. Lewis subsequently brought an action against Correction Officers Francisco Velez, Joseph Bennie, Thomas Casciano, Juan Lopez, Richard Richardson, Stanley Williams, Francisco Bryan, and Thomas Hayes pursuant to 42 U.S.C. § 1983, claiming that they beat him without provocation and used excessive force in restraining him. The defendants claim that Mr. Lewis initiated the violence and that their actions constituted reasonable attempts to restrain him. The parties have consented to my jurisdiction for all purposes, pursuant to 28 U.S.C. § 636(c). Mr. Lewis now moves *in limine* to exclude certain evidence that the defendants intend to proffer at trial.

*Background*

On the day of the incident at issue here, Gary Lewis was in the custody of the City of New York Department of Correction. He was housed in the James A. Thomas Center, a correctional facility on Riker's Island.

Mr. Lewis claims that while on his way to the correctional facility's mental health clinic on the afternoon of May 1, 1989, he was attacked by Officers Bennie and Lopez, who had been hiding in a stairwell. Officer Williams also allegedly joined in the attack. Mr. Lewis was handcuffed and escorted to the receiving room near the clinic, where Officers Bryan, Casciano, Hayes, Lopez, Richardson, and Velez again beat him or observed the beating without attempting to prevent it.

The defendants' version of the events is markedly different. They allege that Correction Officer Jeffrey Skya was escorting Mr. Lewis toward the mental health clinic when Mr. Lewis turned and punched Officer Skya in the face and then continued to punch and kick him. Correction Officers Lopez and Bennie witnessed the assault and attempted to restrain Mr. Lewis, who in turn assaulted them. In the course of defending themselves, the two officers punched Mr. Lewis. Correction Officer Williams then arrived and assisted in attempting to restrain Mr. Lewis.

An alarm was sounded during the altercation, and additional officers, including Cap-

tain Francisco Bryan, arrived after Mr. Lewis had been successfully restrained. Captain Bryan and Correction Officer Richard Richardson took Mr. Lewis to the correctional facility's main clinic. When they reached the magnometer search area, Captain Bryan ordered Officer Richardson to remove Mr. Lewis' handcuffs and to strip-search him. After Officer Richardson removed the handcuffs, the plaintiff allegedly punched him. Officer Richardson then struck the plaintiff in self-defense. Captain Bryan and Officer Richardson attempted to restrain Mr. Lewis and were joined in that effort by Correction Officers Casciano and Velez and Captain Thomas Hayes. In the course of the officers' attempts to restrain Mr. Lewis, the plaintiff fell, striking his face on the magnometer.

Regardless of how the altercation began, Mr. Lewis was injured, and he commenced this action pursuant to 42 U.S.C. § 1983, seeking compensatory damages. He now moves to preclude the defendants from introducing at trial: (1) evidence of prior prison disciplinary proceedings brought against him, (2) evidence of his prior felony convictions, (3) his medical and psychiatric records, and (4) various reports concerning the incident at issue.

*Discussion*

A. Disciplinary History

The plaintiff seeks to preclude admission of his prison disciplinary records, consisting of an individual "Report of Infraction" for each of four incidents that occurred in 1989 in addition to the one in question. The disputed records concern (1) setting fire to a trash can; (2) throwing an unidentified liquid at a nurse; (3) throwing an unidentified liquid at a doctor; and (4) fighting with another inmate. The defendants argue that the plaintiff's disciplinary records are probative of his intent to assault the defendants and are thus admissible under Rule 404(b) of the Federal Rules of Evidence, which states in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as

proof of ... intent ... or absence of mistake or accident....

The defendants also intend to cross-examine the plaintiff regarding his disciplinary history in order to impeach his credibility.

The plaintiff argues that inquiry regarding his disciplinary records would serve merely to alienate the jury by impermissibly suggesting that he has a propensity for violence. He further contends that the records are not admissible to show his intent, because his state of mind is not relevant. Finally, he maintains that his disciplinary history has no bearing on his credibility.

Pursuant to Rule 404(b), Mr. Lewis' disciplinary records may not be admitted to show a propensity for violence. *See United States v. Whalen,* 940 F.2d 1027, 1034 (7th Cir.) (in assault case, evidence of prior fight "not ... in any way relevant ... except to show [the witness'] propensity for violence"), *cert. denied,* —— U.S. ——, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991); *Davis v. Mason County,* 927 F.2d 1473, 1484 (9th Cir.) (in § 1983 excessive force case, evidence of plaintiff's prior fight to show "proclivity to violence" inadmissible), *cert. denied,* —— U.S. ——, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991); *Ismail v. Cohen,* 899 F.2d 183, 188–89 (2d Cir.1990) (other wrongful acts inadmissible merely to show propensity, though admissible for any other relevant purpose under circuit's "inclusionary" approach). The disciplinary record of a § 1983 plaintiff should be excluded if offered to show that the plaintiff is "a violent person and that he, therefore, must have been the aggressor and precipitated the assault." *Lataille v. Ponte,* 754 F.2d 33, 37 (1st Cir.1985). Proffers of this type of evidence, even where purported to show a party's "'sadistic,' 'malicious,' 'aggravated state of mind'" still constitute "no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show [a person's] propensity to commit such acts." *Berkovich v. Hicks,* 922 F.2d 1018, 1022–23 (2d Cir.1991).

While it is true that Rule 404(b) permits evidence of other acts to show intent, intent must in fact be at issue in the case to justify admission of such evidence. Here,

the defendants' theory appears to be that Mr. Lewis will argue that he did not intend to initiate the altercation and acted in self-defense. To rebut this, say the defendants, they should be permitted to introduce evidence of prior instances in which Mr. Lewis was found to have violated prison rules.

Even assuming that the plaintiff's intent is material, this analysis misconstrues the meaning of intent and its relation to a claim of self-defense. "An act is intentional if it is done knowingly, that is if it is done voluntarily and deliberately and not because of mistake, accident, negligence or other innocent reason." 4 Leonard B. Sand, et al., *Modern Federal Jury Instructions* (Civil) ¶ 87.03 at 87–176 (1993); *see United States v. Townsend,* 987 F.2d 927, 929–30 (2d Cir.1993); *United States v. Masat,* 948 F.2d 923, 931 n. 15 (5th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992); *United States v. Lennartz,* 948 F.2d 363, 368–69 (7th Cir.1991); *see also* Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law* (2d ed. 1986) § 3.5 at 217–18; 1 Leonard B. Sand, et al., *Modern Federal Jury Instructions* (Criminal) ¶ 3A.01 at 3A–2 (1993).

■ A party claiming self-defense, then, may concede intent. *See Connecticut v. Johnson,* 460 U.S. 73, 87, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (plurality); *id.* at 94, 103 S.Ct. at 981 (dissent); *Gunn v. Newsome,* 881 F.2d 949, 964 (11th Cir.), *cert. denied,* 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 540 (1989). That will be the case here if, as the defendants anticipate, the plaintiff testifies that he deliberately struck the correction officers, but only in order to protect himself after the officers began to assault him. Under such circumstances, the plaintiff would admit intent, and the critical factual determination for the jury would be who struck the first blow.[1] Because the plaintiff's state of mind is not at issue, prior

acts evidence is not admissible on the basis that it is probative of his intent.

The court reached a similar result in *Lewis v. Sheriffs Dep't for St. Louis,* 817 F.2d 465 (8th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 298, 98 L.Ed.2d 257 (1987). That § 1983 civil rights action also arose out of an altercation between officers and a prisoner in their custody. At trial, the defendant officers introduced evidence of an earlier fight between the plaintiff and a deputy sheriff. The court of appeals held that this was error, stating, "[t]he appellees offer no theory which would allow the testimony in under rule 404(b), and we cannot think of one." *Id.* at 467.

The principal case relied upon by the defendants, *Young v. Rabideau,* 821 F.2d 373 (7th Cir.), *cert. denied,* 484 U.S. 915, 108 S.Ct. 263, 98 L.Ed.2d 221 (1987), is distinguishable. In that case, too, an inmate charged correction officers with excessive use of force. While the plaintiff did contend that he acted in self-defense when he grabbed a chain swung by a correction officer, he also argued that his pointing a finger in the officer's face, thus precipitating the incident, was "accidental." *Id.* at 379–81. Thus in *Young,* in contrast to the instant case, the plaintiff himself placed his intent in issue.

■ Whether by asserting self-defense a party raises the issue of intent must therefore be determined on a case-by-case basis. Merely by raising a claim of self-defense, a party does not pave the way to introduction of character evidence generally. "To deny that one intended harm on a particular occasion is not to claim a generally peaceable character. And it cannot be right that merely by claiming self-defense … a defendant puts his whole character in issue; that would make mincemeat of the limitations in Rule 404(a) on the use of character evidence." *United States v. Fountain,* 768 F.2d 790, 795, *amended on other grounds,* 777 F.2d 345 (7th

---

1. In other instances, a claim of self-defense is not a concession of specific intent. For example, in response to a charge of intentional murder, a criminal defendant may argue that he acted in self-defense but intended only to frighten or wound the victim, not to kill him. In such circumstances, the defendant's intent clearly remains a contested issue. *See Stephens v. Kemp,*

846 F.2d 642, 664–65 (11th Cir.), *cert. denied,* 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988); *Harris v. Scully,* 779 F.2d 875, 879–80 (2d Cir.1985); *Ramirez v. Jones,* 683 F.2d 712, 716 (2d Cir.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). Here, however, there is no suggestion that any such distinctions are relevant.

Cir.1985) (per curiam), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986). Thus, the expectation that the plaintiff will testify that he acted in self-defense is insufficient to justify admission of prior acts evidence here.

■ Finally, the plaintiff's disciplinary history is not admissible to impeach his credibility, absent testimony on his part that creates a misleading impression of his prior conduct. While impeachment is indeed a proper purpose for the introduction of prior acts, none of the acts chronicled in Mr. Lewis' disciplinary record reflect dishonesty or deceit. Nor has it been suggested that he will volunteer false information about his conduct while incarcerated. Thus, the disciplinary history has not been shown to be probative of the plaintiff's credibility. Nor do the cases cited by the defendants support their contention that prior acts evidence can be admitted wholesale for purposes of impeachment. Rather, in every case they cite, the evidence was admitted for some other specific purpose. *See United States v. Pelusio,* 725 F.2d 161, 167–68 (2d Cir.1983) (other acts evidence admitted to controvert claim of mistake or accident); *United States v. Stockton,* 788 F.2d 210, 219 n. 15 (4th Cir.) (other acts evidence admitted where contained in prior inconsistent statements), *cert. denied,* 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986); *United States v. Moreno,* 649 F.2d 309, 315 (5th Cir. Unit A June 1981) (evidence of other acts used to rehabilitate witness); *Arcoren v. United States,* 929 F.2d 1235, 1243 (8th Cir.) (evidence of other acts admissible both to show motive and because witness opened door through inconsistent testimony in grand jury and at trial), *cert. denied,* —— U.S. ——, 112 S.Ct. 312, 116 L.Ed.2d 255 (1991). Without some "other purpose" to justify admitting Mr. Lewis' disciplinary records, the defendants' argument regarding credibility boils down to an attempt to admit evidence of other bad acts to show Mr. Lewis is incredible due to his propensity for violence—the purpose explicitly prohibited by Rule 404. These records, then,

are not admissible on any of the grounds advanced by the defendants.

### B. Prior Felony Convictions

■ The plaintiff next contends that evidence of his conviction for possession of a controlled substance and two convictions for assault should be excluded. The defendants argue that these convictions are admissible under Rule 609(a) of the Federal Rules of Evidence, which states in relevant part:

> For the purpose of attacking the credibility of a witness,
>
> (1) evidence that a witness ... has been convicted of a crime shall be admitted, subject to Rule 403,[2] if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted ... and
>
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Under Rule 609(b), it is presumed that evidence of a crime will be excluded if more than ten years have elapsed since the witness' conviction or release from custody, whichever is later.

The defendants argue that the plaintiff's felony convictions are probative of his credibility, which is central to the case. *See United States v. Sanders,* 964 F.2d 295, 299 (4th Cir.1992). They contend that the plaintiff should not be permitted to appear before the jury as if he were a citizen of unblemished character. In response, the plaintiff again urges that such evidence does not bear upon his credibility and would improperly prejudice the jury by encouraging it to conclude that he has violent propensities. Mr. Lewis proposes that the defendants be permitted to elicit the fact that he is an incarcerated felon, but that they be barred from exploring the nature and details of his offenses.

■ Neither drug crimes nor assault involve dishonesty or false statement, *see United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977), so the plaintiff's con-

---

**2.** Under Rule 403 of the Federal Rules of Evidence, relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."

victions for these crimes are not automatically admissible under Rule 609(a)(2). On the other hand, none of the convictions at issue is more than ten years old; thus, evidence of the crimes is not presumptively barred under Rule 609(b).[3]

The question of what crimes are probative of credibility is difficult and often not thoroughly explored. *See United States v. Rosales*, 680 F.2d 1304, 1306–07 (10th Cir.1981) (excluding convictions for forgery, burglary, conspiracy, illegal possession of a firearm, and violation of narcotics laws as "not normally suggest[ive of] the special probative value on the issue of credibility contemplated by Fed.R.Evid. 609(a)(1)"); *Furtado v. Bishop*, 604 F.2d 80, 93–94 (1st Cir.1979) (convictions for armed robbery, burning a building, and assault and battery "not particularly probative of credibility"), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).

■ In balancing prejudice against probative value in a case brought by prison inmates, one court excluded all convictions except those involving dishonesty or false statement. *Davenport v. DeRobertis*, 1986 WL 4157 at *2 (N.D.Ill. Mar. 31, 1986) (convictions deemed "only minimally probative of their credibility and very likely to cause prejudice to plaintiffs since jurors might be unwilling to award damages once they have focused on the specific serious crimes which resulted in plaintiffs' incarceration"). In the instant case, even if evidence of all his prior crimes were excluded, Mr. Lewis would not profit from a misperception by the jury that he was a model citizen since he will testify about events occurring during his stint as a prison inmate. *See Donald v. Wilson*, 847 F.2d 1191, 1198 (6th Cir.1988), *recognized as overruled on other grounds by Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989); *Furtado*, 604 F.2d at 93–94 (excluding convictions did not prejudice rights of defendants in § 1983 case where "jury could hardly have forgotten that the case arose in a prison setting"). Conversely, where the jury knows that a witness is a convicted felon, admission of

prior crimes may cause relatively little additional prejudice. *See Donald*, 847 F.2d at 1198 (though probative value of rape conviction was slight, prejudice due to its admission was "minimal"). It is thus not improper to admit convictions for past felonies where conduct in those crimes was not similar to conduct at issue, *Lewis*, 817 F.2d at 467 (citing *United States v. Jackson*, 627 F.2d 1198, 1209–10 (D.C.Cir.1980)), and where credibility is important to the jury's decision. *Id.* (citing *United States v. Johnson*, 720 F.2d 519, 521 (8th Cir.1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984)).

■ There is little reason, therefore, to bar admission of Mr. Lewis' prior conviction for possession of a controlled substance. While the probative value of such a conviction may be small, given the jury's awareness that the plaintiff is a convicted felon, there is no prejudice that could substantially outweigh that probative value. Mr. Lewis' drug conviction is therefore admissible.

■ Use of the remaining assault convictions, however, should be barred. One of these convictions, for assault in the third degree, was for a misdemeanor charge punishable by imprisonment for not more than one year. That conviction is therefore inadmissible under Rule 609(a)(1), which permits only the admission of convictions for crimes punishable by imprisonment "in excess of one year."

■ The other assault conviction should be excluded in light of both the nature of the crime and the admission of Mr. Lewis' prior drug conviction. As Judge Newman observed in *United States v. Washington*, 746 F.2d 104 (2d Cir.1984), there is

no justification and considerable danger in impeaching a defendant's credibility with a prior conviction for the same type of offense as the one on trial when the prosecutor already has available for impeachment another conviction for a different type of offense.... Once credibility is impeached by a prior felony conviction, the incremental probative force of a second conviction is

---

3. Though the parties have not stated the date of Mr. Lewis' conviction for possession of a controlled substance, it is assumed for purposes of this analysis that the conviction occurred within the past decade, so as not to run afoul of the time limit contained in Rule 609(b).

minimal. Yet the prejudicial effect is substantial when the second conviction is for the same type of offense as the pending charge. We expect a great deal of juries when we instruct them to consider any conviction only for impeachment of credibility and not as evidence of a propensity to commit crime. However dubious our faith in the jury's ability to make that distinction in most cases, there is really no excuse for pushing the matter to the breaking point by admitting a prior conviction for the same type of offense being tried once credibility has already been adequately impeached by another conviction.

*Id.* at 106–07 (Newman, J., concurring).

■■■■ Convictions for crimes or other bad acts that bear a close resemblance to actions alleged in the current case are likely to run afoul of Rule 404(b), because they cause unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts. "Aside from the fact that violent or assaultive crimes generally do not reflect directly on credibility, the potential for prejudice is 'greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial.'" *Williams v. Henderson,* 451 F.Supp. 328, 331 (E.D.N.Y.) (quoting *United States v. Puco,* 453 F.2d 539, 542 (2d Cir.1971)), *aff'd mem.,* 584 F.2d 974 (2d Cir.1978). Given the facts of the current case, assault convictions skirt too close to the impermissible suggestion that the plaintiff had a propensity toward violence and acted in conformity with his aggressive predisposition. Informing the jury that Mr. Lewis has been convicted for a prior assault would be unacceptably prejudicial. Thus, while the fact that Mr. Lewis is a convicted felon serving a sentence of eleven years to life may be elicited, the charge on which he was convicted may not.[4]

### C. Medical Records

The plaintiff further seeks to preclude admission of his medical records, claiming that they (1) represent unacceptably prejudicial evidence of previous violent encounters between the defendant and other inmates, (2) impermissibly suggest that the plaintiff is "accident prone," and (3) are irrelevant, because the plaintiff's claim for compensatory damages is for temporary pain and suffering resulting from the altercation rather than for any long-term or permanent injury. The defendants contend that the records illustrate Mr. Lewis' physical condition prior to May 1, 1989, and should be admissible to show preexisting injuries, so as to rebut the plaintiff's claim that the defendants' blows caused injuries to his head, face, and left eye.

■■■■ Past medical records detailing Mr. Lewis' physical condition are relevant to the extent that causation of Mr. Lewis' injuries is in controversy. It follows, then, that those portions of the medical records which relate to preexisting injuries that could controvert the plaintiff's claims will be admissible. As yet, the defendants have not identified such relevant portions of the records, and therefore no more specific ruling can be made at this time.

### D. Records of Psychiatric Treatment

Next, Mr. Lewis moves to preclude introduction of his psychiatric records. The defendants seek to introduce this evidence of the plaintiff's psychiatric history both to demonstrate preexisting physical injuries and to show that the plaintiff's mental condition

---

**4.** In *United States v. Tomaiolo,* 249 F.2d 683 (2d Cir.1957) the Second Circuit made clear that evidence of prior convictions should be no more detailed than is necessary to impeach credibility, holding that where a defendant was on trial for bank robbery, admission of details of a prior candy store robbery to which the defendant had pleaded guilty constituted abuse of discretion:

> [N]eedlessly detailed examination into the circumstances of the robbery ... went far beyond what was necessary to establish a criminal conviction for the purpose of impeaching credibility. Its obvious purpose and effect was to

do more than to impeach defendant's credibility—it was intended to show that he was a dangerous criminal. Although the degree to which counsel may dwell on a particular point is within the discretion of the trial judge, it seems to us that here this discretion was not wisely exercised.

*Id.* at 687; *see also United States v. Biaggi,* 705 F.Supp. 848, 850 (S.D.N.Y.1988) (limiting cross-examination on prior crimes to type of crime, time and place of conviction, and punishment received).

caused him to initiate the violent encounter with the correction officers. The plaintiff argues that his psychiatric history is not probative of credibility and that its disclosure would invade his privacy and would trigger prejudice on the part of jurors, who may think that an individual who suffers from any mental disturbance cannot testify accurately or truthfully. Thus the plaintiff requests that the court block admission not only of his psychiatric history, but also of evidence that he was being escorted to a mental health clinic at the time of the first altercation at issue in this case.

The defendants base their argument on *Chnapkova v. Koh*, 985 F.2d 79 (2d Cir.1993). The plaintiff in that case sued a plastic surgeon for malpractice, alleging that he had caused her facial scarring. The surgeon's defense was that Ms. Chnapkova's scars were caused by other surgery subsequent to the operation he had performed upon her. *Id.* at 80. The Second Circuit ruled that the trial court's exclusion of the plaintiff's psychiatric records was erroneous. *Id.* at 82.[5]

*Chnapkova* is distinguishable from the case at hand in significant ways. In *Chnapkova*, the court found that the plaintiff's records were relevant and admissible because they were compiled subsequent to the surgery performed by the defendant, yet they contained no indication of complaints related to scarring, thus supporting the defendant's theory that Ms. Chnapkova's injuries did not result from his actions. *Id.* at 82.

Of all the documents containing evidence of Mr. Lewis' psychiatric history, only the City of New York Department of Health Prison Health Services observation form, dated March 27, 1989 (Exh. SS),[6] includes statements regarding preexisting physical injuries. While those portions of the document discussing such injuries may be admissible for purposes of showing causation and damages, this finding does not compel admission of the rest of Mr. Lewis' psychiatric history.

With respect to the psychiatric diagnoses, the defendants lean far too hard on the statement in *Chnapkova* that "[a] clinical history of mental illness is probative of the credibility of the witness." *Id.* at 81. A holding that any and all aspects of a witness' psychiatric history are probative of credibility would embrace unwarranted stereotypes of persons who seek mental health treatment. That the Second Circuit intended a narrower construction is evident from the cases that it cited. Notably, the court quoted *United States v. Butt*, 955 F.2d 77, 82 (1st Cir.1992), to the effect that "[e]vidence about [a witness'] prior condition of mental instability that provides some significant help to the jury in its efforts to evaluate *the witness's ability to perceive or recall events or to testify accurately* is relevant" (emphasis added). *Chnapkova*, at 81. Similarly, the Second Circuit cited *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir.1983), which admitted psychiatric evidence where a witness "may harbor *delusions ... that grossly distort his reaction to events*") (emphasis added). *Chnapkova*, at 81. The records at issue in *Chnapkova* documented the plaintiff's delusions and her diagnosis of paranoid schizophrenia. *Id.* Thus, *Chnapkova* is properly read to sanction the admission of those aspects of a witness' psychiatric history that truly bear upon credibility by illuminating the witness' powers of perception and ability to testify with accuracy. Thus, those portions of Mr. Lewis' psychiatric history which describe hallucinations, delusions, and

**5.** Though they are hearsay, medical records, including psychiatric records, are admissible under Rule 803(6) of the Federal Rules of Evidence. *Norton v. Colyer*, 828 F.2d 384, 386–87 (6th Cir. 1987); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(6)[06] at 200 (1992). Moreover, statements made to medical and mental health professionals and recorded for purposes of diagnosis and treatment are admissible pursuant to Rule 803(4) of the Federal Rules of Evidence. *Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 933 (1st Cir.1991); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th

Cir.1991); *Mendez v. United States*, 732 F.Supp. 414, 423–24 (S.D.N.Y.1990).

**6.** Lettered exhibits refer to documents accompanying the defendants' "Affidavit In Opposition To Plaintiff's Motion *In Limine* To Exclude Certain Prejudicial Evidence." Numbered exhibits correspond to documents attached to the "Affidavit of Tigran W. Eldred In Support of Plaintiff's Motion *In Limine* To Exclude Certain Prejudicial Evidence" submitted by the plaintiff.

the like are relevant and admissible. Other aspects of his psychiatric records, such as notes regarding his "antisocial personality," relate only to a propensity for violence and must therefore be excluded.

■ Finally, there is no basis for excluding reference to the fact that Mr. Lewis' original destination on May 1, 1989 was a mental health clinic. This piece of background information is hardly prejudicial, especially where portions of the plaintiff's psychiatric history itself are admissible.

### E. Reports, Records, and Investigative Documents

Finally, the plaintiff seeks to exclude internally generated reports or investigation records regarding the incident at issue, arguing that such material is inadmissible hearsay and would encroach upon the jury's fact finding role by revealing that a state official has already determined the ultimate question at issue: that is, whether the defendants acted properly. The defendants argue that the reports they prepared are admissible pursuant to hearsay exceptions and that the jury is free to exercise its own judgment regarding the weight the reports deserve.

The following documents are at issue: (1) the plaintiff's "Notice of Infraction" (Exh. 24); (2) "Incident Reports" prepared by correction officers who either were involved in the incident or observed some portion of it (Exhs. A–G, I, and S); (3) a "Communication Control Center Report" by Captain Bryan made on May 1, 1989 (Exh. 30); (4) a "Preliminary Telephone Report" from Captain

Bryan to Assistant Deputy Warden John O'Brien made on May 1, 1989 (Exh. 29); (5) an investigative report prepared by Captain Bryan and addressed to Warden Andrew Phoenix ("Bryan Report") (Exh. H); and (6) an "Unusual Incident Report" signed by Warden Phoenix ("Phoenix Report") (Exh. K). The admission of these documents is governed by Rule 803 of the Federal Rules of Evidence, which establishes exceptions to the hearsay rule for records of regularly conducted business activity[7] and for public records and reports.[8]

#### 1. *Notice of Infraction*

■ The Notice of Infraction regarding the May 1, 1989 altercation is an accusatory instrument and, as such, it embodies charges leveled by officials and does not possess the inherent indicia of reliability upon which hearsay exceptions, including those set forth in Rule 803(6) and Rule 803(8), are bottomed. *See Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 505 F.Supp. 1125, 1180 (E.D.Pa.1980), *aff'd in part and rev'd in part sub nom. In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238 (3d Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

#### 2. *Incident Reports, Communication Control Center Report, and Preliminary Telephone Report*

■ The Incident Reports, the Communication Control Center Report, and the Preliminary Telephone Report generated by correction officers within hours of the May 1,

---

**7.** Rule 803(6) provides for the admission of "[r]ecords of regularly conducted activity" as follows:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph

includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**8.** Rule 803(8) allows admission of "[p]ublic records and reports" as follows:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ... or (C) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or circumstances indicate lack of trustworthiness.

1989 incident[9] are governed by Rule 803(6) of the Federal Rules of Evidence, which renders records of regularly conducted activity admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." The business record exception rests upon the trustworthiness and reliability of such records. *Saks International, Inc. v. M/V "Export Champion",* 817 F.2d 1011, 1013 (2d Cir.1987) ("principal precondition to admission of documents as business records ... is that the records have sufficient indicia of trustworthiness to be considered reliable"); *Bracey v. Herringa,* 466 F.2d 702, 704, 704 n. 4 (7th Cir.1972) (citing Charles T. McCormick, *Evidence* § 281 at 597 (1954) (hearsay exception justified by "the element of *unusual reliability* ... furnished by the fact that in practice regular business records have a comparatively high degree of accuracy....")).

 Incident Reports such as the ones at issue here do not properly constitute "business records." *See Bracey,* 466 F.2d at 704 (correction officers' reports of prisoner beatings do not fit Rule 803(6) exception). In *Palmer v. Hoffman,* 318 U.S. 109, 113, 63 S.Ct. 477, 480, 87 L.Ed. 645 (1943), referred to in the advisory committee notes to Rule 803 as the seminal case on the trustworthiness requirement for business records, the Court affirmed the exclusion of records of a railroad accident that were prepared by railroad personnel. The Supreme Court reasoned that an accident report is not

> typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls.... [T]he fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business....

*Id.* at 113, 63 S.Ct. at 480. The Court noted that such an expansive interpretation of "business records" would result in the admission of self-serving records of any incident for which an organization could foresee liability, as long as the records were made pursuant to some sort of regular recording system,

> though it had little or nothing to do with the management or operation of the business as such. Preparation of cases for trial by virtue of being a "business" or incidental thereto would obtain the benefits of this liberalized version of the early shop book rule. The probability of trustworthiness of records because they were routine reflections of the day to day operations of a business would be forgotten as the basis of the rule. Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability acquired from their source and origin and the nature of their compilation.

*Id.* at 113–14, 63 S.Ct. at 480–41 (citations omitted).

 Furthermore, hearsay is not admissible under Rule 803(6) where the reliability of the materials in question is undermined. Where reports of inmate beatings show a lack of reliability and trustworthiness due to the self-interest of the correction officers responsible for the records, such records are inadmissible. *Bracey,* 466 F.2d at 704–05. Self-interest functions strongly in the case at hand, where correction officers involved could be subject to disciplinary action, including dismissal, for using excessive force (*see* Department of Correction Directive 5002R at 19 (Exh. 25)) and could, furthermore, be brought up on criminal charges or incur civil liability. The fact that, as the defendants point out, correction officers receive strict instructions to make their reports truthfully does not diminish the motives that undermine the trustworthiness of such reports. Thus, the Incident Reports, the Communication Control Center Report, and the Preliminary Telephone Report are inadmissible under the business records exception.

---

**9.** The one exception to this time frame concerns the Incident Report made by Correction Officer Jeffrey Skya, dated "5/—/89." According to the defendants, injuries Officer Skya incurred while fighting with the plaintiff prevented him from completing the report promptly on the day of the incident. This delay does not, however, alter the nature of the report; its only effect is, perhaps, to render the report less reliable.

### 3. Bryan Report

■ The Bryan Report, dated June 15, 1989, presents the results of Captain Bryan's investigation of the May 1, 1989 incident. It incorporates statements from correction officers involved in the violence, describes the force used throughout by those officers, deems that force justified, and recommends punishing Mr. Lewis for causing the episode.

Rule 803(8)(C) of the Federal Rules of Evidence allows the court to use its discretion to admit in civil cases "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The term "factual findings" has been construed to include opinions or conclusions based upon investigations. *Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir.1991); *Perrin v. Anderson*, 784 F.2d 1040, 1046–47 (10th Cir.1986); *see also Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 700 F.2d 785, 818–19 (2d Cir.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984); *Anderson v. City of New York*, 657 F.Supp. 1571, 1578 (S.D.N.Y.1987). The advisory committee's note to the rule recommends four factors useful in assessing the trustworthiness of such materials: (1) the timeliness of the investigation; (2) the special skill or experience of the reporter; (3) whether a hearing was held in conjunction with the investigation, the level at which the hearing was conducted, and the procedures invoked; and (4) any motive on the part of the informant that could interfere with accuracy. *See* Fed.R.Evid. 803 advisory committee's note; 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(6)[06] at 254 (1992); *Gentile v. County of Suffolk*, 129 F.R.D. 435, 450 (E.D.N.Y.1990), *aff'd*, 926 F.2d 142 (2d Cir.1991). The advisory committee noted that other factors "no doubt could be added," and the Second Circuit, in addition to adopting the suggested factors, has at times incorporated an additional factor: the "finality of the findings" made in the report. *See Gentile*, 129 F.R.D. at 458 (tentative or inconclusive nature of reports cuts against admission, though Second Circuit has admitted portions of interim reports). The Bryan Report must be assessed in light of each of these considerations.

#### (a) Timeliness

■ The timeliness factor evolved out of concern over staleness or tampering with evidence. *Gentile*, 129 F.R.D. at 450. The Bryan Report, dated approximately one and one-half months after the incident, is not untimely.

#### (b) Special Skill or Experience of Reporter

■ There has been no showing that Captain Bryan had any training in investigative skills; rather, any expertise he had would appear to have resulted from any prior investigative experience, which the defendants have not detailed. Moreover, mere experience is not necessarily enough to tilt this factor in favor of admitting the report. *See Anderson*, 657 F.Supp. at 1579 (congressional committee members' experience in the course of multiple investigations did not necessarily endow them with expertise in evaluating credibility).

■ In addition, Rule 803(8) does not circumvent the hearsay rule; any double hearsay contained in a report is admissible only if each level of hearsay qualifies independently for a hearsay exception. Fed. R.Evid. 805; *Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y.1993). This principle excludes much of the Bryan Report, which is comprised largely of hearsay statements from correction officers involved in the May 1, 1989 incident.

■ That a report and factual findings are based in part upon hearsay falling within no exception does not necessarily render the findings themselves untrustworthy, *see Gentile*, 129 F.R.D. at 453; however, when findings are based in part upon inadmissible hearsay, they are typically admissible only where the inadmissible portions of the report were "adequately evaluated and filtered" by a reporting body that "[i]n effect ... qualified as an expert under Rules 702 and 703 of the Federal Rules of Evidence." *Id.* There has been no showing that Captain Bryan is qualified as an expert such that his findings should be admitted on this basis.

#### (c) Hearing

██ The defendants note that, according to the Phoenix Report, an administrative hearing was conducted on May 3, 1989, to assess charges against the plaintiff arising from the May 1, 1989 altercation and that "inmate Lewis was found guilty of assault on staff and sentenced to an additional 90 days in punitive segregation." The hearing is not, however, explicitly identified as a basis for the Bryan Report and so does not enhance its trustworthiness.

██ Even if the hearing was part of the general "investigation" conducted by Captain Bryan, neither party has produced a record of the proceeding, and it is not clear what, if any, procedural safeguards may have been afforded the plaintiff. Therefore, even if the hearing is considered, it does not bolster the trustworthiness of the report.

#### (d) Motivation and Bias

██ Investigative reports are admissible at the court's discretion. *Eng,* 146 F.R.D. at 79 (citing *Miller v. New York Produce Exchange,* 550 F.2d 762, 769 (2d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977)); *City of New York v. Pullman Inc.,* 662 F.2d 910, 914 (2d Cir.1981) ("As with any exception to the rule against hearsay, Rule 803(8)(C) is to be applied in a common sense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission."), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). "As the Court of Appeals for the Second Circuit has observed, 'in most cases in which [investigative reports] have been excluded, there has been reason to suspect bias....'" *Gentile,* 129 F.R.D. at 457 (quoting *LeRoy v. Sabena Belgian World Airlines,* 344 F.2d 266, 272 (2d Cir.), *cert. denied,* 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965)). "By bias the courts and the Advisory Committee refer principally to reports compiled in anticipation of litigation." *Gentile,* 129 F.R.D. at 457.

It is true that, as the defendants urge, courts have cautioned against concluding that "an internal investigation is necessarily biased, absent specific evidence," and have admitted such reports, while instructing the jury against deferring to official conclusions. *Perrin,* 784 F.2d at 1047. In *Perrin,* the Tenth Circuit upheld admission of a report of a state board of "high officials" designated to review shootings by law enforcement personnel. *Id.* Significantly, the court of appeals was reviewing a district court's determination under an "abuse of discretion" standard with great deference to the trial court's fact-specific determination regarding admissibility; furthermore, there was no indication that the police officers who compiled the report were at all involved in the incident at issue. *Id.*

██ A strong likelihood of improper motivation on the part of a witness can outweigh all other trustworthiness factors. *Anderson,* 657 F.Supp. at 1579. In the case at hand, correction officers' jobs are on the line, and they are at risk of both criminal and civil liability, as noted in their own intradepartmental directive. Such stakes suggest the potential for far more bias than was present in, for instance, *Anderson.* There, the court barred admission of a congressional report on police misconduct that was based upon testimony given at hearings by public officials, officers, and others, who were motivated by general self-interest and "political expediency and grandstanding." *Id.* at 1577–79.

Furthermore, memoranda or reports prepared after an incident have been held inadmissible where the preparer of the report knows at the time of making the report that he or she is "very likely, in a probable law suit relating to that [incident], to be charged with wrongdoing as a participant in the [incident], so that he is almost certain, when making the memorandum or report, to be sharply affected by a desire to exculpate himself and to relieve himself or his employer of liability." *Hoffman v. Palmer,* 129 F.2d 976, 991 (2d Cir.1942), *aff'd,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). A longstanding awareness that correction officers may be liable under § 1983 for inmate beatings has been found to warrant the assumption that "at least some guards write their reports on

such occurrences with that possibility in mind." *Bracey,* 466 F.2d at 704. Thus, the likely presence of strong motivation on the part of the defendants to clear themselves of wrongdoing undercuts the trustworthiness of the Bryan Report as well as the Incident Reports.

### (e) Finality

 The Bryan Report is a report submitted to Warden Phoenix, who was responsible for preparing a subsequent investigative report based in part upon the Bryan Report. Thus, the finality factor does not favor admission of the Bryan Report.

In sum, of the factors used to assess trustworthiness, only the timeliness factor clearly cuts in favor of admission of the Bryan Report, and several factors cut strongly against it. The Bryan Report is, therefore, inadmissible.

### 4. *Phoenix Report*

The plaintiff charges that Warden Phoenix's report is based upon a previously assembled record or collection of factual materials and is not, therefore, truly "investigative" so as to qualify as a hearsay exception under Rule 803(8). *See City of New York v. Pullman Inc.,* 662 F.2d at 915; *Wetherill v. University of Chicago,* 518 F.Supp. 1387, 1390 (N.D.Ill.1981). An inference that the Phoenix Report is not based upon independent investigation can be drawn from the facts that sections of it are identical to the Bryan Report and that it contains no significant new information beyond Warden Phoenix's conclusion that justifiable force was used. In addition, the plaintiff calls attention to an excerpt from Captain Bryan's deposition that could be read to suggest that his investigation was the only one conducted in regard to this incident. (Exh. 31 at 157). Indeed, there is no showing that Warden Phoenix did anything other than merely repackage the Bryan Report.

 Even assuming that the Phoenix Report is properly investigative, it appears merely to summarize the hearsay statements and reports made by the correction officers involved in the incident and to offer the conclusion that the officers' use of force was proper. As noted above, Rule 803 may not be used to circumvent the "indicia of reliability" requirement for admission of hearsay, and thus the statements that form the bulk of the report are, as discussed above, inadmissible hearsay that do not become admissible by virtue of their inclusion in the warden's report.

 The remaining portion of the Phoenix Report is the conclusion that the force used by the correction officers was justified. The plaintiff urges that Warden Phoenix's "finding" should be excluded, since its sole function would be to place an official's imprimatur upon a finding on exactly the same issue that the jury must determine in this case. The defendants counter that the court should admit the finding and instruct the jury on its role in order to counteract any improper usurpation of the jury's function. *See Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 805 F.2d 49, 54 (2d Cir.1986). The defendants' argument might prevail if the "finding" included anything other than Warden Phoenix's bare conclusion on the primary issue in the case. However, that conclusion is the only finding that remains once the hearsay statements of the correction officers are excluded. Therefore, its admission is not justified.

### *Conclusion*

For the foregoing reasons, (1) evidence of Mr. Lewis' disciplinary history is excluded, (2) his prior conviction for possession of a controlled substance is admissible, while his convictions for assault are excluded, (3) his medical and psychiatric records are excluded, except where they are relevant to show either preexisting injury or a condition interfering with his ability to perceive events or to testify accurately, and (4) the proffered records and reports concerning the incident are excluded. These determinations are, of course, subject to modification as the trial progresses and the context in which the evidence may be offered is further clarified.

SO ORDERED.