**James JOHNSON, Plaintiff,**

v.

**THE NEW YORK HOSPITAL and Dr. David Skinner, President, Defendants.**

**No. 94 Civ. 3140 (HB).**

United States District Court, S.D. New York.

Nov. 6, 1995.

---

James Johnson, pro se.

Barbara Hoey, Kelley Drye & Warren, New York City, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

BAER, District Judge:

Plaintiff brings this action under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, for alleged unlawful employment termination by defendants The New York Hospital (the "Hospital") and its President, Dr. David Skinner. Defendants move for summary judgment. For the following reasons, I deny defendants' motion.

### *I. BACKGROUND*

Plaintiff, *pro se,* began working for The New York Hospital as a nurse in November 1987. Plaintiff asserts that defendants' termination of his employment on August 30, 1991 was "discriminatory with respect to handicap," Compl. at 3, ¶ 9, because the termination was based on an incident, which took place on August 25, 1991, that resulted from "a relapse in [his] treatment for [a]lcoholism," *id.* at 2, ¶ 8. Defendants acknowledge that they based their decision to terminate plaintiff largely on that incident. Defs.' Mem.L.Supp.Mct.Summ.J. ("Defs.' Mem.") at

1 ("Mr. Johnson ... was discharged for engaging in an act of misconduct that warranted immediate termination pursuant to the Hospital's published Rules of Conduct."). Defendants describe the incident as consisting of plaintiff

> appear[ing] in the lobby of the Hospital in the middle of the night in a severely intoxicated state carrying an open can of beer, verbally abus[ing] several employees and physical resist[ing] their attempts to escort him off the premises, kick[ing] and scream[ing], and, in general, creat[ing] a public disturbance.

*Id.* Plaintiff, however, states that the defendants' description of the incident is "not factually correct," Pl.'s Aff. Opp'n Mot.Summ.J. at 2, ¶ 7, and takes issue with many of defendants' asserted "Material Facts Not In Dispute."

### *II. STANDARD FOR SUMMARY JUDGMENT*

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment where the evidence shows that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment "is properly regarded ... as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). An issue of credibility is insufficient to preclude the granting of a motion for summary judgment. Neither side can rely on conclusory allegations; instead, the disputed issues of fact must be supported by evidence that would allow a "rational trier of fact to find for the nonmov-

ing party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, factual disputes that are irrelevant to the disposition of the suit under governing law will not preclude entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## III. DISCUSSION

Defendants attempt to support their version of the August 25, 1991 incident solely with citations to plaintiff's deposition testimony, even though defendants simultaneously acknowledge that plaintiff "has testified that he was in a 'blackout' and has no independent recollection of the events of that night." Defs.' Mem. at 6 (citations omitted). Undeterred, defendants assert that plaintiff does not "contest" the following facts:

*[Plaintiff] went to the Hospital sometime after midnight, when he was off-duty.

*He was in an intoxicated state and was carrying an open can of beer.

*He was confronted first by Security Officer McGettrick, who tried to escort him off the premises. He ran away from and had to be pursued by Officer McGettrick.

*When several other security officers came on the scene and tried to subdue him, he kicked, yelled, and used profanity and obscene language.

*He was escorted to the Emergency Room. On the way there, he continued to kick[,] scream and use profanity.

*He used profanity towards a Hospital Administrator.

*He was ordered to leave the Hospital.

*Against express orders, he returned to the Hospital later that night, still drunk and went up to Baker 17, a patient-care unit. At that point, he was again ordered to leave the Hospital.

*Id.* at 6–7 (citations omitted).

Examination of the cited deposition testimony, however, makes clear that plaintiff fails to contest those allegations primarily because he claims to have no recollection of what occurred that night. Accordingly, plaintiff emphasizes that he does not confirm those events either. The following is typical of plaintiff's testimony:

Q. Do you recall the fact that the security guards have all stated that you were in a severely intoxicated state when you went to the premises of the hospital?

A. Yes.

Q. The security guards also have reported that you were carrying an open container of beer when you entered the hospital.

A. Yeah.

Q. Do you have any independent recollection of that?

A. No.

\*   \*   \*   \*   \*   \*

Q. How did they physically assault you, Mr. Johnson?

A. According to the testimony [in other forums and not in connection with the instant suit], I was—of Officer McGettrick, I was laughing and playing of sort, running around a pole, when they grabbed me and placed me to the floor.

Q. Well, were they trying to remove you from the premises, Mr. Johnson?

A. They may have been. I have no knowledge of what they were doing.

Q. You were drunk, correct?

A. I believe so, yes.

Q. You were carrying an alcoholic beverage, correct?

A. I believe so, yes.

Q. And you were running around the lobby of New York Hospital?

A. According to the [guards'] testimony.

Q. And what time of day was this, Mr. Johnson.

A. I have no independent knowledge.

\*   \*   \*   \*   \*   \*

Q. Mr. Johnson, we have been here since 8:00 this morning. We have gone over all the allegations and you've testified on at least a half-dozen occasions in this deposition today that you have no independent recollection of many of these incidents, correct?

A. Right.

Q. You've now stated in a blanket statement, quote, that you don't believe the actions are true. I want you to tell me which specific actions, not just in a blanket statement, but which specific actions or allegations by the hospital you now believe are not true.

A. I don't believe I physically assaulted anybody.

Q. Okay. Is there anything else?

A. I don't believe I trespassed.

Q. Okay. Anything else?

A. I believe that, actually, that I was buzzed in by a security guard. I believe that's how I got into the hospital.

Q. So you don't believe you physically assaulted anyone?

A. Right.

Q. And that's not based on your personal recollection; that's based on what you think you have gleaned from the testimony given by the security officers [in other forums and not in connection with the instant suit]; is that right, Mr. Johnson?

A. And other documentation such as the 60 sheets. And the legal definition of the term "assault."

Q. But just so it's clear for the record, it's not based on your personal recollection, right?

A. No, I don't have any.

\* \* \* \* \* \*

Q. ... [A]t some point whether or not it was before or after you were handcuffed, you did become loud and abusive, right?

A. I believe I might have.

Q. You might have, you don't remember?

A. Yes.

Q. And you're not disagreeing with the fact that you were in an intoxicated state when you went to the hospital, right?

A. Well, I believe that I could have been very much, yes.

Q. You're not disagreeing with the fact that you were in possession of an open can of beer when you went to the hospital, right?

A. I'm not going to stipulate that I was, but I believe that I could have been.

Q. And you're not going to disagree with the fact, because we had already gone over it at some length, that after being told to leave the premises by the security guards you returned later that night and went up to a patient unit in an intoxicated state; is that right?

A. I have no recollection of that. But I have no reason to believe that that's not true.

Johnson Dep. at 187, 200–01, 332–35.

I do not find plaintiff's testimony incredible. That he may have suffered from an alcoholic "blackout," and therefore lacks recollection of what occurred that night, is plausible. Thus, although at times, plaintiff's responses appear to indicate his agreement with certain of defendants' allegations, his deposition, viewed in its entirety, is insufficient to support the conclusion that there exist no issues as to defendants' recitation of plaintiff's behavior.

Indeed, defendants have failed in the first instance even to establish their account of the facts. Defendants have not taken the deposition of any of the purported witnesses to the incident of August 25, 1991 (other than the alleged actor himself, as indicated above). Nor have defendants presented significant admissible evidence documenting the incident.[1] Defendants claim that "the statements of the guards who witnessed the inci-

---

1. The defendants have offered a report prepared by a hospital security guard describing the incident, which report constitutes hearsay that would likely not be admissible at trial as a "record[] of regularly conducted activity" under Rule 803(6) of the Federal Rules of Evidence. See *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Lewis v. Velez*, 149 F.R.D. 474 (S.D.N.Y.1993). Defendants have not contended otherwise.

I also find particularly disturbing defendants' proffer of the "affidavit" of Stacey Mackey, who

is Manager of Employee Relations at the Hospital. Mackey states:

I personally interviewed several of the Security Officers who had witnessed the incident.... The witnesses described the incident of that night to me in some detail. *From those interviews, the following facts were clear:* [Plaintiff] had come onto premises in a severely intoxicated state. When Hospital security attempted to remove him from the premises, he became violent, kicking, thrashing, and punching the guards. He was also verbally abusive, yelling

dent establish, beyond a doubt, that [plaintiff] engaged in serious misconduct on the night of August 25, 1991, which involved physical and verbal abuse of New York Hospital security guards and other Hospital employees." Letter of Oct. 30, 1995 from B. Hoey, Esq. to Hon. H. Baer, Jr., at 3. Because those statements were made at various hearings unrelated to the instant lawsuit, however, they constitute hearsay and will not be considered by the Court. *See Tetra Technologies, Inc. v. Harter,* 823 F.Supp. 1116, 1120 (S.D.N.Y.1993). When the Court informed defendants at oral argument that the guards' testimony would not be considered, defendants indignantly asserted that they are under no duty to take any depositions. Actually, because defendants base their termination of plaintiff on his alleged actions on that night and because defendants have moved for summary judgment, defendants certainly must establish that there is no issue as to whether those events did, in fact, occur. That is required, of course, only if defendants hope to have their motion granted. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304–05 (2d Cir.1995) ("The burden of showing that no factual dispute exists rests on the party seeking summary judgment." (citation omitted)).

### IV. CONCLUSION

I do not reach any of the substantive questions of law raised by this case, because defendants have failed to demonstrate that there are no issues as to the material facts. The motion is DENIED. Trial will begin later this month. Please be in touch with Chambers for the precise date. It will begin at 9:30 a.m. in Courtroom 17B.

**SO ORDERED.**

---

and using profanity. In general, [plaintiff] created a huge disturbance at the Hospital that night.
Aff. of Mackey at 4–5, ¶¶ 20–21 (emphasis added). I trust *defendants, or at least their counsel,* understand that Rule 56 of the Federal Rules of Civil Procedure requires that affidavits "be made on personal knowledge," and not on "personal[ ] interview[s]."

Finally, although the findings of the several government agencies that investigated plaintiff's

termination would likely be admissible at trial, *see* Fed.R.Evid. 803(8)(C), they are not sufficient by themselves to enable me to conclude that no issues of fact exist. *Cf. Henry v. Daytop Village, Inc.,* 42 F.3d 89, 96 (2d Cir.1994) (holding that the findings made at an administrative proceeding, coupled with plaintiff's assertions that were based on her personal knowledge, created a dispute as to a factual issue).